IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE RAY, JR., ) | Case No. CIV. F-96-6252-AWI |
| ) | |
| Petitioner, ) | <u>DEATH PENALTY CASE</u> |
| ) | |
| vs. ) | ORDER GRANTING PETITIONER'S |
| ) | MOTION FOR ABEYANCE AND |
| Robert Ayers, as Acting Warden of ) | DENYING WITHOUT PREJUDICE |
| San Quentin State Prison* ) | RESPONDENT'S APPLICATION FOR |
| ) | ENLARGEMENT OF TIME TO FILE |
| Respondent. ) | FURTHER BRIEFS AND PLEADINGS |

This matter is before the Court on the Motion of Petitioner Clarence Ray, Jr. ("Ray") to hold in abeyance federal proceedings pending exhaustion of state remedies before the California Supreme Court. The motion is contested by Respondent Robert Ayers, as Acting Warden of San Quentin State Prison (the "State"). At the same time the State filed it's opposition to Ray's motion it also filed an application for enlargement of time to file a responsive pleading. The Court finds the motions amenable to resolution without hearing.

**I.   Procedural History.**

On July 28, 1989, Ray was sentenced to death by the Kern County Superior Court for the April 17, 1984 murder of a woman, the attempted murder of her male companion, and the attempted robbery of both. He became a suspect in these crimes following a confession given in the

---

*Robert Ayers is substituted for his predecessor Steven W. Ornoski, as Acting Warden of San Quentin State Prison pursuant to Federal Rule of Civil Procedure 25(d).

Michigan state prison system, where he was serving a life sentence for a murder committed subsequent to the Kern County crimes. Following his sentence in Kern County, Ray was returned to Michigan authorities where he remains incarcerated.

On April 24, 1991, appellate counsel, Charles Bush, was appointed to represent Ray on his automatic direct appeal and related habeas proceedings. After several proceedings, the trial record was filed on October 1, 1992. Direct appeal proceedings moved forward with Ray's opening brief filed July 12, 1993, the State's opposition filed March 10, 1994, and Ray's reply brief filed August 30, 1994. The opinion of the California Supreme Court affirming Ray's conviction and sentence was issued on May 6, 1996 and the order denying rehearing was filed on June 26, 1996. Certiorari was denied by the United States Supreme Court on November 4, 1996.

During the direct appeal proceedings, Mr. Bush initiated efforts to prepare a state habeas petition. On July 12, 1993, the same day he filed the appellant's opening brief, he requested $16,600 to fund an investigation of Ray's competency and various jury issues. This request was denied nearly a year later on June 22, 1994. On May 24, 1995, nearly a year after that, Mr. Bush requested $46,925 to fund a broad investigation including issues related to Ray's confessions, alternate suspects, a contested photo line-up, ballistics, other forensic issues, mental state defenses, mitigation, prior crimes, and shackling. By separate application, Mr. Bush requested funds to travel to Michigan to interview Ray. Whereas the court granted the travel authorization on May 17, 1996, the request for investigation

funds was denied on June 19, 1996, except for $2,500 to conduct a limited document search.[1]

Ray's first state habeas petition, California Case No. S057313, was filed on November 14, 1996, nearly two years and three months after his reply brief on direct appeal was filed.  On September 10, 1998, Ray filed a motion for leave to supplement his initial state habeas petition with allegations regarding timeliness.  The Supreme Court granted this motion on July 31, 2002, and on August 29, 2002, Ray filed those supplemental timeliness allegations.  Ray's second state habeas petition was filed on September 27, 2002 under California Case No. S110219.  Not long thereafter, the California high court denied Ray's first state habeas petition on April 9, 2003.  With the exception of one sub-claim, which was denied as premature, all claims in the initial petition were denied as untimely pursuant to *in re Robbins*, 18 Cal. 4th 770, 780-81 (1998) and *in re Clark*, 5 Cal. 4th 750, 763-99 (1993).  One of those untimely claims also was found "pretermitted" under *in re Dixon*, 41 Cal. 2d 757, 759 (1953).  In addition, with the exception of the one premature sub-claim, all untimely claims and the untimely/pretermitted claim were denied on the merits.  The second state habeas petition, which among other claims raises the issue of Ray's mental retardation and the consequent constitutionality of his death sentence under *Atkins v. Virginia*, 536 U.S. 304 (2002), is still pending before the California Supreme Court.

---

[1] This information is taken from Ray's federal petition at ¶¶ 41, 45, and 46.  In the federal petition, Ray alleges that the document search funds had been requested originally in the initial (July 12, 1993) funds request.  The denial of the second request came between the issuance of the opinion on direct appeal and the order denying rehearing.

Federal proceedings in this Court were initiated by a request for appointment of counsel and a stay of execution of Ray's sentence on November 8, 1996. An application to proceed in forma pauperis was added on November 25, 1996. All requests were granted on November 25, 1996 and December 18, 1996. By February 10, 1997, however, the Selection Board had not yet recommended counsel for appointment and the Federal Defender's Office requested an additional stay of execution during the attorney selection process. Given the status of the (first) state habeas petition (which was the only state petition on file at the time), the Court declined to consider appointment of federal counsel until completion of the state habeas proceedings. Over eight years later, and following the decisions by the Supreme Court in *Rhines v. Weber*, 544 U.S. 269 (2005) and *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), Ray returned to this Court to renew his application for appointment of federal counsel on December 28, 2005.[2] The Federal Defender was appointed on March 14, 2006. Ray's initial federal habeas petition was filed concurrently with the instant motion for abeyance on June 13, 2006, approximately three months following appointment of federal counsel.

## II. Ray's Motion for Abeyance.

The parties agree that the Supreme Court's decision in *Rhines* is controlling. *Rhines* permits a district court to hold in abeyance a mixed petition, that is, one which contains both exhausted and unexhausted claims, while the petitioner pursues state post-conviction remedies, provided three requirements are met. 544 U.S. at 277-78.

---

[2] Between February 1997 and December 2005, the Court was not advised of the status of state court proceedings, and specifically did not learn of the second state habeas petition or the denial of the initial state petition until that time.

First there must be "good cause for the petitioner's failure to exhaust his claims first [or earlier] in state court." *Id*. at 277. Second, the unexhausted claims must not be "plainly meritless." *Id*. Third, a mixed petition "should not be stayed indefinitely," meaning, there should be specific limits on the trip to state court and back to federal court. *Id*. at 277-78.

**A.   Ray's Contentions in Favor of Abeyance**.

The focus of Ray's argument is the validity and merit of his second state habeas petition alleging his execution is proscribed under *Atkins*, 536 U.S. at 335. Because *Atkins* was just decided in 2002, he claims he has "good cause" for not exhausting that claim prior to its presentation in the state court on September 27, 2002. Second, he argues the *Atkins* claim and related claims have merit because he is seriously and verifiably mentally impaired. Third, he claims he has not engaged in dilatory conduct because he first requested federal counsel in this case just four days after the finality of his direct appeal proceeding, on November 8, 1996 (following the denial of certiorari by the United States Supreme Court on November 4, 1996). He filed the present federal petition within three months from appointment of federal counsel after *Rhines* changed the rules for proceeding with some aspects of federal habeas litigation (like filing a protective petition) during pendency of state exhaustion proceedings.

He maintains that if the Court rules on the currently exhausted federal claims (i.e., those presented on direct appeal and/or in the first habeas petition), without waiting for the resolution of his *Atkins* claims, the presentation of the *Atkins* claims in a subsequent federal petition may be barred as successive.

**B.     The State's Contention in Opposition to Abeyance.**

As a primary argument, the State claims Ray's request for abeyance is premature because some of the claims in the federal petition have never been raised before the California Supreme Court in any pleading. In support of this contention, the State provides three concrete examples of claims presented in the federal petition it contends were never presented on direct appeal or in either of the state habeas petitions. The claims cited by way of example are Claim 6.C., Claim 7.A., and that portion of Claim 25 dealing with Ray's relative non-culpability for other criminal activity.

The focus of the State's second argument is the untimeliness of Ray's first state habeas petition and consequent unavailability of statutory tolling under 28 U.S.C. § 2244(d)(2). Subsection (d)(2) of § 2244 provides that the one-year federal limitations period is tolled, as a matter of statute, during the time in which "a properly filed application for State post-conviction or other collateral review" is pending in state court. Thus, where a "properly filed" petition for habeas relief is filed in state court during the one-year federal limitations period, the statute will be tolled during pendency of that state proceeding. As noted in the recitation of the background facts, Ray's first state habeas petition was filed (November 14, 1996) within a year of the finality of Ray's direct appeal proceedings (November 4, 1996). However, since Ray's first state habeas petition was denied on independent grounds of untimeliness, that petition does not qualify for statutory tolling because under *Pace*, 544 U.S. at 413, a state petition denied as untimely is not properly filed. The State cites to *Bonner v. Carey*, 425 F.3d 1145 (9th Cir. 2005), as additional authority for this proposition. In *Bonner*, the court held that a

1  petition dismissed as untimely by a California court is not "properly
2  filed" and, in turn, is not entitled to statutory tolling under §
3  2244(d)(2).  *Id*. at 1149.  The State further argues that since the
4  first state petition was not properly filed and did not toll the
5  limitations period, the second state petition also did not toll the
6  limitations period for those claims.

7     **C.   Resolution**.

8      Addressing the State's arguments, Ray resolutely disputes the
9  contention of non-exhaustion of any claims presented in the federal
10 petition.  In his reply brief he points out where and how his
11 allegations have been exhausted, noting that he did not utilize
12 exactly the same language in the federal petition as he did in the
13 state pleadings, and that, in any event, the factual and legal bases
14 for the claims are not fundamentally altered by new allegations.  In
15 support of this latter proposition he cites *Landrigan v. Schriro*, 441
16 F.3d 638, 648 (9th Cir. 2006), which holds "[n]ew factual allegations
17 do not render a claim unexhausted unless they fundamentally alter the
18 legal claim already considered by state courts."  The Court declines
19 to weigh in on the exhaustion dispute at this time.  It may well be
20 that on further analysis Ray is correct, because the contested
21 allegations are not new, or if they are, they do not fundamentally
22 alter claims already pending before or previously denied by the
23 California Supreme Court.  It may also be that additional allegations
24 do, as the State contends, introduce entirely new factual bases for
25 previously exhausted claims.  *See e.g., Correll v. Stewart*, 137 F.3d
26 1401, 1412 (9th Cir. 1998) (trial counsel's failure to develop a
27 mental competency defense is distinct from trial counsel's failure to
28 present a misidentification defense).

1    The Court further declines to address the question if whether any
2 of Ray's claims in the first state habeas petition can withstand a
3 statute of limitations challenge.  The Court notes that while the
4 State has presented the foundation of a cogent argument for lack of
5 statutory tolling under *Pace* and *Bonner*, the issue of equitable
6 tolling is still wide open.[3]  In light of the fact that a valid state
7 habeas petition is still pending in state court, the Court will not
8 venture to reach either statutory or equitable tolling in Ray's case
9 until that state petition is resolved.

10    Ray's motion for abeyance of federal proceedings is granted, with
11 all exhaustion disputes and the statute of limitations challenge
12 reserved following resolution of the state petition.  Should Ray
13 decide to present additional claims to the California Supreme Court,
14 the status of any such additional petition shall be described in the
15 quarterly status reports his counsel currently provides to the Court.

16 **III. The State's Motion to Enlarge Time for Filing a Motion to**
17 **Dismiss and then an Answer to the Federal Petition.**

18    The State requests 45 days from the issuance of a ruling on Ray's
19 abeyance motion within which to file a motion to dismiss (for lack of

---

[3] On this subject, the Court notes that prior to *Pace*, the Ninth Circuit had determined a procedurally barred state habeas petition nonetheless was "properly filed" within the meaning of § 2244(d)(2) for statutory tolling purposes so long as the procedural bar was not a condition to filing. *Dictado v. Ducharme*, 244 F.3d 724, 727-28 (9th Cir. 2001) (cited by *Smith v. Duncan*, 297 F.3d 808, 812 (9th Cir. 2002) and *Jenkins v. Johnson*, 330 F.3d 1146, 1150 (9th Cir. 2003)). Specifically with respect to untimely bars determined in state court, *Dictado* held that if a state's rule governing timely commencement of post-conviction relief proceedings contained exceptions that required the state courts to examine the merits of the petition before dismissing it, even if ultimately found untimely, the petition should be regarded as properly filed because the state statute or rule did not impose an absolute bar to filing.  244 F.3d at 727-28.  *Pace* reversed this precedent.

exhaustion), and then 30 days to answer the federal petition following the ruling on the motion to dismiss.

In light the Court's ruling to hold federal proceedings in abeyance pending resolution of the state petition, the request for enlargement of time to file further motions and pleadings is denied without prejudice. When the California court does rule on the pending state petition, the Court will schedule a case management conference to establish a briefing schedule for whatever motions the State intends to advance.

IT IS SO ORDERED.

DATED:   July 20, 2006

                                          /s/ Anthony W. Ishii
                                              Anthony W. Ishii
                                   United States District Judge